359 F.2d 966
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW,
AFL-CIO, and Its Local 647, Plaintiffs-Appellants,
v.
TEXTRON INC. and Union Central Life Insurance Company,
Defendants-Appellees.
 No. 16409.
 United States Court of Appeals Sixth Circuit.
 May 10, 1966.
 
 Thomas S. Calder, Cincinnati, Ohio, for appellee Taxtron, Inc., Dinsmore, Shohl, Barrett, Coates & Deupree, Jack G. Evans, Cincinnati, Ohio, on the brief.
 Joseph L. Rauh, Jr., Washington, D.C., for appellants, John Silard, Stephen I. Schlossberg, Harriett R. Taylor, B. Michael Rauh, Washington, D.C., Richard N. Koehler, Hamilton, Ohio, on the brief.
 Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.
 WEICK, Chief Judge.
 
 
 1
 This appeal involves only a question of interpretation of the termination provisions of a collective bargaining agreement and pension plan entered into between the parties. The facts are not in dispute. Appellant union in 1950 entered into a collective bargaining agreement with the Randall Company, the corporate predecessor of appellee, Textron, Inc. Under the agreement the company recognized the union as the representative of its Cincinnati, Ohio production workers, machineshop employees and metal polishers.
 
 
 2
 Article XXIV of the agreement established a pension plan for its employees. It provided in part:
 
 
 3
 'Subject to the approval of its Board of Directors and Stockholders, the Employer will establish a pension plan, hereinafter referred to as the 'Plan,' a copy of which is attached hereto as Exhibit C and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified, and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such comflict.'
 
 
 4
 A later amendment to Section 6 of Article XXIV, which amendment changed only the effective termination date, provided in part:
 
 
 5
 'This Article XXIV and the Plan herein referred to shall continue in full force and effect until August 24, 1958 and shall be automatically renewed for successive periods of one year each unless either party shall give written notice to the other of intention to terminate or modify at least sixty (60) days in advance of the 24th day of August 1958 or in such successive year. Within ten (10) days after receipt of such notice a conference will be arranged to discuss such termination or modification, which shall in no event become effective before the 24th day of August in 1958 or in such successive year. Should such termination or modification not be agreed upon before such 24th day of August in 1958 or in such successive year, this Agreement shall nevertheless continue in full force and effect until the thirtieth day following the giving, on or after August 24, 1958 or in such successive year, by either party to the other of a further specific written notice terminating the effective period of said Agreement.'
 
 
 6
 In addition, the pension plan itself in Section 1 of Article VIII provided for termination of the plan. That section provided in part:
 
 
 7
 'The Company reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors * * *'
 
 
 8
 Section 2 of Article VIII of the pension plan provided for distribution of the funds to the covered employees, upon its termination.
 
 
 9
 Under date of June 20, 1958 the union sent the company a sixty-day written notice,
 
 
 10
 '* * * to terminate our collective bargaining contract, supplemental unemployment benefit agreement and pension plan agreement.' The termination was not then agreed upon between the parties. On June 22, 1959, however, the union sent a new sixty-day notice to the company to terminate the collective bargaining agreement. Thereafter, on November 16, 1959, the company sent the following notice to the union:
 
 
 11
 'Pursuant to Memorandum of Understanding and Agreement, dated September 14, 1955, Paragraph 8 and Paragraph 9, we herewith inform you that we are giving you thirty days notice. Thereafter, all agreements and extensions between Randall and UAW therewith terminate.'
 
 
 12
 On November 19, 1959 the company offered to furnish the union with copies of the actuarial determination in which the dollar distribution would be designated by name and amount for each employee under the plan. Such determination was later made and furnished to the union. It showed that as of December 31, 1959 there were credits to employees of.$184,444.03.
 
 
 13
 The company, however, never proceeded with the distribution to employees and decided not to do so. It ceased production operations in Cincinnati and terminated the employment of about five hundred of its employees. The only employees remaining in Cincinnati were thirty-two machineshop workers.
 
 
 14
 The union filed the present action in the District Court to compel distribution. Cross motions for summary judgment were filed and the District Court granted summary judgment for the company. In a Memorandum Opinion the Court reasoned that Article VIII, Section 1 of the pension plan provided:
 
 
 15
 'The Company reserves the right to * * * terminate the plan by action of its Board of Directors, * * *' and since no such action to terminate the plan had been taken by the Board of Directors, only the collective bargaining agreement was terminated by the company's thirty-day notice, and not the plan; therefore no distribution was required.
 
 
 16
 The company argues that the pension plan was not and could not be terminated under Article VIII without formal action of its Board of Directors. It contends that the thirty-day notice which it gave terminated the collective bargaining agreement and its obligation to maintain the plan for employees represented by the union, but did not terminate the plan itself.
 
 
 17
 The appellant union, however, argues that the plan, including Article VIII, was made a part of the collective bargaining agreement by the express language of Article XXIV of the agreement and therefore the termination provision of Section 6 of that Article controls; that Section 6 permits termination upon mere notice by either party within the prescribed time limits; and that no formal action of the company's board of directors is needed. The union asserts that if the termination provision of Article VIII of the plan is in conflict with the termination provision of Article XXIV of the agreement, then by the express terms of Article XXIV of the agreement the provisions of the agreement control. It maintains that the notice given by the company terminated the plan as well as the collective bargaining agreement.
 
 
 18
 The two provisions for termination are in conflict, one providing for termination by action of the company's board of directors and the other providing for termination by mere notice from either party. Section 6 of Article XXIV expressly covers both Article XXIV of the agreement and the plan. The language reads, 'This Article XXIV and the Plan herein referred to.'
 
 
 19
 A reading of the entire agreement and plan shows that it was the intention of the parties that the company was to have no interest in the funds in the plan. Section 3 of Article V of the plan provides:
 
 
 20
 'The Company shall have no right, title or interest in the contributions made by it to the trustee and no part of the pension or insured fund shall revert to the Company * * *'
 
 
 21
 Again in Section 1 of Article VIII of the plan, it is provided that no termination 'shall operate to recapture for the company any contributions previously made to the trustee or insurance company under the plan * * *'
 
 
 22
 The District Court's decision could operate to permit the company to regain some of the fund at least for the benefit of employees who had earned no credit.
 
 
 23
 As of June 30, 1958 there was $261,675.90 in the fund and only twelve employees had retired to that date. At the termination date of the agreement the company discharged all of its five hundred Cincinnati employees except thirty-two employees. It is doubtful that all the pension funds will be expended to cover these remaining employees and those already retired. If the company uses the funds to cover employees elsewhere it is obtaining the benefit of the fund. In addition, the record shows that the company intended to terminate, and thought it did, the agreement and the plan. The company's notice of termination stated: 'all agreements and extensions between Randall and UAW' would terminate. We are of the opinion that this notice was sufficient to terminate the plan.
 
 
 24
 The pension plan was certainly a part of the agreement between the company and the union. We cannot assume that the Director of Industrial Relations of the company, who signed the company's notice of termination, acted without authority of the board of directors.
 
 
 25
 The judgment of the District Court is vacated and the cause is remanded with instructions to order distribution of the funds in the plan as provided by Section 2 of Article VIII.